UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGGIE CRANE,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL,<br><br>    Defendant. | Case No. 17-cv-01433-WHO<br><br>**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 23 |

## INTRODUCTION

Currently before me are the parties' cross-motions for summary judgment in Reggie Lamont Crane's appeal of the denial of his claim for disability insurance benefits. Crane argues that the Administrative Law Judge ("ALJ") improperly discounted Crane's subjective testimony about the significance of his pain. After a review of the administrative record, I find that the ALJ provided clear and convincing reasons for rejecting Crane's symptom testimony. I further find that the ALJ did not fail to fully and fairly develop the administrative record. Accordingly, the defendant's motion for summary judgment is GRANTED and plaintiff's motion for summary judgment is DENIED.

## BACKGROUND

### I. PROCEDURAL BACKGROUND

On April 12, 2013, Crane applied for Title II Social Security Disability Insurance Benefits ("DIB"), alleging a disability onset date of December 23, 2011. AR 154. His claim was denied initially on September 20, 2013, and upon reconsideration on February 27, 2014. AR 102-105, 107-111. Thereafter, Crane filed a written request for hearing. AR 112. Crane and his mother, Sarah Brown, appeared without counsel and testified at the hearing held on June 2, 2015, in Oakland, California. AR 44-49, 153. A vocational expert ("VE"), Laurence S. Hughes, also testified at the hearing by telephone. AR 70-79. In his decision dated June 22, 2015, the ALJ found that Crane was not disabled under sections 216(i) and 223(d) of the Social Security Act because he could still perform the duties of a travel clerk as that job is generally performed in the

national economy. AR 29-39.

The Appeals Council denied Crane's request for review, and Crane timely filed this action seeking judicial review pursuant to 42 U.S.C. § 405(g). Dkt. No. 1. Before me are the parties' cross-motions for summary judgment. Dkt. Nos. 16, 22.

## II.   CRANE'S TESTIMONY

At the time of his hearing, Crane was a 46-year-old man living with his mother in Oakland, California. AR 53, 64. Though Crane's mother does all of the household chores, cooking, cleaning, and shopping, Crane can dress, shower, use the restroom, and brush his teeth unassisted. AR 64-65. Crane is a high school graduate. He testified that he: (i) has no problems reading, writing, or speaking; (ii) has and is able to use a computer and cellphone; (iii) goes to the movies once in a "blue moon;" and (iv) drives up to twice a week, either for the purpose of getting out of the house or obtaining something he needs, such as soap or deodorant. AR 53, 65-67.

Crane has no record of gainful employment since December 23, 2011. AR 57. He was previously employed as a cashier and a travel clerk. AR 54-55. As a cashier, Crane was sometimes required to lift 50 pounds or more, and his job primarily entailed walking and standing. AR 55-56. As a travel clerk, Crane was required to lift and carry boxes up to 30 pounds; he stood for half of the time and sat for the other half. AR 54-55.

Crane, who is 6 feet tall and around 320 pounds, contends that he suffers from several severe physical impairments, including chronic back and leg pain, and chronic kidney disease. AR 54, 57-59. Though he testified that the pain is present all of the time, Crane asserts that extended standing, sitting, or other physical activity makes the pain worse. AR 59-61. More specifically, Crane testified that he can only: (i) sit for about seven minutes; (ii) stand in place without moving for 9 minutes; (iii) walk for maybe five or six minutes; and (iv) lift between two-to-three pounds. AR 61-63. After standing or walking, Crane has to lie down for three or four hours before he can get up and move around again. AR 62.

Crane is prescribed the use of a cane. AR 63. For medications, Crane takes Tramadol three times a day and Baclofen. AR 58. Crane testified that he sleeps for around three hours each time he takes Tramadol. As a result, he sleeps for most of the day. AR 58. According to Crane,

2

the medication helps reduce the pain, but the pain is always present.  AR 63.

### III. CRANE'S MEDICAL HISTORY

On June 2, 2011, Crane had an appointment at Tiburcio Vasquez Health Center for leg pain and obesity apparently due to lumbar disc disease.  AR 288.  At an August 1, 2011 follow-up appointment, Crane's leg pain was described as chronic, with persistent symptoms that became worse when driving.  AR 287.  Improved diet and exercise were identified as the course of treatment at both visits.  AR 287-288.

On September 8, 2011, Crane was referred to the renal clinic at Alameda County Medical Center where he was diagnosed with Stage II chronic kidney disease.[1]  AR 299.

On September 28, 2011, Crane complained of sciatica-like radiating pain from one session of physical therapy.  AR 286.  His lumbar spine was x-rayed, and the x-ray showed some thoracic spine degenerative changes with bony spurring, but otherwise revealed no fractures or malalignment.  AR 349.  Crane was encouraged to continue with physical therapy despite his complaints of pain.  AR 286.

An MRI of Crane's lumbar spine on April 6, 2012 showed: (i) mild multilevel lumbar spondylosis and straightening of the normal lumbar lordosis; (ii) mild bilateral foraminal encroachment at L1-2 and L2-3; (iii) an annular bulge as well as a small right paracentral/lateral protrusion and slight narrowing of the central canal with mild bilateral foraminal encroachment at L3-4; and (iv) an annular bulge and facet spurring with moderate bilateral foraminal encroachment and mild effacement of the thecal sac at L4-5.  AR 296-297.

Crane visited a neurosurgery clinic on October 31, 2012 to discuss his April 6, 2012 MRI results.  AR 347.  During that consultation, the physician reported that there was nothing from the MRI that indicated surgery was warranted.  *Id.*  The physician instructed Crane that he needed to lose at least 100 pounds, as a lot of his pain could be the result of obesity.  *Id.*  The physician

---

[1] On September 26, 2013, Crane's kidney disease was found stable at stage 2-3.  AR 388.  On September 18, 2014, Crane's kidney disease was found to be stable at stage 3.  AR 422-423. Medical records through 2015 show that Crane received consistent treatment for this condition and hypertension, in the form of continued follow-up office visits and use of prescribed medication. *See, e.g.*, AR 300-302, 388, 417, 422-423.  Plaintiff does not contend that the ALJ misconstrued the medical records regarding Crane's kidney disease.

prescribed Crane Neurontin and Naproxen, and Crane was referred to Physical Therapy and Dietary for additional services. *Id.*

At a February 22, 2013 nutrition appointment, dietician notes indicate that Crane was walking daily. AR 306. The dietician recommended that Crane increase his walking. *Id.* Crane indicated he continued to suffer daily back pain at an April 2013 office visit. AR 304-305.

On May 1, 2013, Crane returned to the neurosurgery clinic for a routine follow-up appointment. AR 346. Having lost fifteen pounds since his previous visit, Crane reported that he was "able to exercise, but [that] when he walked more than 25 minutes," he had to stop and rest as his pain would get "pretty severe." *Id.* Crane also reported that his pain, which he described as radiating from his back across his buttocks and down to his right leg, became worse with prolonged sitting or lying in the same position. *Id.* Noting that Crane could still stand to lose a lot more weight, the physician encouraged him to keep exercising and to continue his program of losing weight. AR 346-347. Finding no further neurological concerns, Crane was discharged as a patient from the clinic. AR 347.

On August 23, 2013, Crane was evaluated at the Pacific Health Clinic by Dr. Calvin Pon. AR 372-375. Dr. Pon reviewed Crane's medical record, including the findings of Crane's April 6, 2012 MRI and neurosurgical clinic visits, and conducted an independent examination. *Id.* Dr. Pon reported that Crane's chief complaint during the visit was low back pain with associated bilateral lower extremity pain and numbness. AR 372. In conducting the examination, Dr. Pon noted that Crane's movements were slow, that he needed the support of his cane in order to stand, and that he could not tolerate being in the supine position. AR 373-374. Crane also refused to squat because of bilateral lower extremity pain and numbness. AR 373. However, Dr. Pon found that he did not limp, and that, once standing, he could remain standing unassisted. *Id.* Dr. Pon further found that: (i) Crane was able to flex his lumbar spine to approximately 45 degrees, limited by back pain; (ii) his right and left lateral bending was approximately 10 degrees; (iii) his bilateral knee flexion was approximately 130 degrees; (iv) his straight leg raising from the sitting position was 95 degrees; (v) manual motor muscle testing at the hips bilaterally was 4/5, limited by low back pain; and (vi) his bilateral knee extensors were 5/5, while bilateral knee flexors were 4-/5,

limited by bilateral lower extremity pain and numbness. AR 373-374.

In terms of functional capacity, Dr. Pon opined that Crane should be able to: (i) stand and walk with his cane for four hours during an eight-hour workday; (ii) sit for six hours during an eight-hour workday; and (iii) occasionally-to-frequently lift and carry 10+ pounds. AR 374. Dr. Pon further stated that Crane could perform limited to occasional stooping, crawling, and climbing of stairs and/or ladders, and would frequently have bilateral pushing leg and foot control. *Id.* Lastly, Dr. Pon found that Crane was neither restricted in bilateral pushing/pulling arm and hand control, nor limited in ability to reach bilaterally or perform gross and fine manipulative tasks with both hands. *Id.*

On September 17, 2013 and February 26, 2014, two Disability Determination Service ("DDS") consultants performed individual reviews of Crane's records. AR 81-90, 92-101. Drs. Camille B. Williams and Robert Mitgang (collectively "consultants") each considered Crane to be only partially credible as they found his statements about the intensity, persistence, and functionally limiting effects of his impairments unsubstantiated by the objective medical evidence provided. AR 85-86, 97. The consultants opined that Crane could frequently lift and/or carry ten pounds, stand and/or walk (with normal breaks) for four hours, and sit for six hours in an eight-hour workday. AR 87, 98. The consultants further opined that Crane was not disabled, but was limited to sedentary work. AR 89, 100-101.

In connection with his appeal, Crane submitted supplemental medical records to the Appeals Council. AR 8-15, 414-428. Those subsequent medical records show that Crane continued to attend follow-up visits, be prescribed the same medications, and describe the same level of pain due to his impairments described above through April 3, 2015. *See, e.g.*, AR 8-12, 15, 27, 300-302, 388, 417, 422-423.

## IV. ALJ DECISION

The ALJ utilized the five-step sequential evaluation to determine Crane's disability claim. AR 33-34; *see* 20 C.F.R. §§ 404.1520(a), 416.920(b). At step one, the ALJ determined that Crane met the insured status requirements of the Social Security Act through September 30, 2016, as Crane had not engaged in any "substantial gainful activity" since his "alleged onset date." AR 34.

At step two, the ALJ found that Crane had the following severe impairments: (i) multilevel spondylosis and straightening of the normal lumbar lordosis; (ii) mild bilateral foraminal encroachment at L1-2 and L2-3; (iii) a small right protrusion at L3-4; (iv) bulging and facet spurring and mild effacement of the thecal sac at L4-5; (v) chronic low back pain with associated bilateral lower extremity pain and numbness (right greater than left); and (vi) obesity. *Id.*

At step three, the ALJ concluded that Crane's impairments did not meet or equal the severity required for the listed impairments. AR 35. The ALJ then determined Crane's RFC and concluded that Crane has the ability to: (i) stand and/or walk with his cane for four hours during an eight-hour workday; (ii) sit for six hours during an eight-hour workday; stoop occasionally; (iii) crouch, kneel, and squat rarely-to-occasionally; perform bilateral pushing of leg/foot controls frequently; and (iv) lift and/or carry 10 pounds frequently and occasionally. *Id.*

In determining Crane's RFC, the ALJ asserted that he considered "all symptoms . . . as consistent with the objective medical evidence." *Id.* The ALJ based Crane's RFC determination "primarily on the thorough and complete orthopedic evaluation" of Dr. Pon. AR 36. He accorded great weight to Dr. Pon's opinion, finding it consistent with Crane's own treatment records. AR 37. The ALJ also accorded great weight to the opinions of the DDS consultants who reviewed Crane's records, finding the consultants' views consistent with Dr. Pon's opinion. *Id.*

The ALJ discounted Crane and his mother's testimony regarding pain severity because their statements were not substantiated by the objective medical evidence of record. AR 38. The ALJ noted that Crane's neurosurgical clinic visits and other treatment records showed that medication, diet and exercise were the only considered courses of treatment, as opposed to surgery. AR 37. The ALJ also noted that the record before him showed that Crane's last follow-up visit for his back was on May 17, 2013, where his back pain was described as stable on his prescribed medications (Ultram/Neurontin). *Id.*

At the fourth step, the ALJ found that Crane was able to perform past relevant work as a travel clerk. AR 38. In making this finding, the ALJ afforded great weight to the opinion of the vocational expert, finding the expert's opinion well-reasoned in light of the underlying vocational evidence. AR 39.

6

The ALJ subsequently concluded that Crane was not disabled as defined by the Social Security Act. *Id.*

**LEGAL STANDARD**

**I.     DISABILITY DETERMINATION**

A claimant is "disabled" as defined by the Social Security Act if: (1) "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment;" and (2) the impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c (a)(3)(A)-(B). The ALJ performs a five-step sequential analysis to determine if an individual is disabled within the meaning of the Social Security Act required under 20 C.F.R. § 404.1520 (a)(4)(i)-(v). *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012). If at any point within these five-steps, the ALJ determines that the claimant is either disabled or not disabled, the ALJ need not move on to the next step. 20 C.F.R. § 404.1520(a)(4).

At the first two steps of the evaluation, the claimant must establish that he: (1) is not performing "substantial gainful activity," and (2) is under a "medically severe" impairment or combination of impairments. *Id.* at § 416.920 (a)(4)(i)-(ii). Substantial gainful activity is defined as "work activity that involves doing significant physical or mental activities" (20 C.F.R. § 404.1572(a)) typically completed for the purpose of payment or profit regardless if profit is realized. 20 C.F.R. § 404.1572(b). For an impairment to be medically severe, it must "ha[ve] lasted or can be expected to last for a continuous period of not less than [12] months" or "can be expected to result in death." 42 U.S.C. § 1382c (a)(3)(A); 20 C.F.R. §§ 416.909, 404.1509.

At the third step, the claimant must establish that his impairment or combination of impairments meets or medically equals a listed impairment provided in Part 404, Subpart P, Appendix 1 of the regulations as described by 20 C.F.R. §§ 404.1525, 404.1526, 416.925, and 416.926. *Id.* at § 416.920(a)(4)(iii). If the claimant's impairment does not meet or equal one of the listed impairments, or does not satisfy the duration of disability requirements, the ALJ is to make a residual functional capacity determination based on all the evidence in the record before

proceeding to the fourth step. *Id.* at § 416.920(e). This determination is used to evaluate the claimant's work capacity for steps four and five. *Id.* Residual functional capacity refers to one's ability to do physical and mental work activities despite any limitations resulting from impairment. *Id.* at §§ 404.1545(a), 404.1594(a)(4).

At step four, the claimant must establish that his impairment prevents him from performing relevant work he or she did in the past ("PRW"). *Id.* at § 416.920(a)(4)(iv). PRW includes: (i) substantially gainful activity; (ii) performed in the past 15 years from the date the disability is established; (iii) which the individual performed long enough to have learned how to do. *Id.* at §§ 404.1560(b), 404.1565. PRW can be considered "either as the claimant *actually performed* it or as *generally performed* in the national economy." *Id.* at § 404.1560(b)(2) (emphasis added).

The burden to illustrate entitlement to DIB is on the claimant at all times during steps one through four; however, if the claimant demonstrates an inability to perform PRW at step four, the burden shifts at step five. *Andrews v. Shalala*, 53 F.3d 1035, 1040 (9th Cir. 1995). At the fifth step, the ALJ considers the claimant's residual functional capacity in relation to his age, level of education, and experience in consideration of whether the claimant is able to do other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(1)-(2). If it is determined that the claimant is unable to do other work, he is disabled.

## II. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court reviews the final decision denying benefits to determine whether the findings are supported by substantial evidence and free of legal error. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Shalala*, 53 F.3d at 1039-40. The Court must review the record as a whole and consider adverse as well as supporting evidence. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting

evidence.'" *Robbins*, 466 F.3d at 882 (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

**DISCUSSION**

**I.      DISCOUNTING CLAIMANT'S TESTIMONY**

Plaintiff argues that the ALJ failed to provide specific, clear, or convincing reasons for rejecting his and his mother's subjective testimony. The ALJ must engage in a two-step analysis when evaluating a claimant's credibility. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ determines "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1036 (internal quotations omitted). Second, if the claimant has met the first step and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (internal quotations omitted); *see Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014). An ALJ must "specifically identify what testimony is credible and what testimony undermines claimant's complaints." *Morgan*, 169 F.3d at 599.

The ALJ may consider many factors when weighing credibility, including "reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (internal quotations omitted). An ALJ's assessment of a claimant's credibility and pain severity is entitled to great weight. *See Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Thy v. Colvin*, No. 16-CV-3127 WHO, 2017 WL 4310731 at *21 (N.D. Cal. Sep. 28, 2017).

Crane argues that supplemental treatment records[2] that were not presented to the ALJ undermine the ALJ's reliance on the fact that there was no evidence of ongoing treatment for the year prior to the hearing as a reason to discount plaintiff's credibility. Plaintiff's Motion for

---

[2] The supplemental medical records are dated from July 25, 2014 through July 28, 2015. AR 8-12, 15, 417, 422-423.

9

Summary Judgment ("Mot.") at 5. Crane further argues that the ALJ's few scattered references to physical activities Crane testified to as well as the fact his conditions were "stable" were insufficient reasons for rejecting Crane and his mother's subjective testimony. Mot. at 5-6.

I find that the ALJ provided valid, specific reasons for finding Crane and his mother's testimony regarding Crane's subjectively disabling symptoms not fully reliable. Only to the extent that the claimant's statements about subjective symptoms "can reasonably be accepted as consistent with the objective medical evidence and other evidence," can the ALJ determine that they limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c)(4); *see also* 20 C.F.R. § 404.1529(c)(2)-(3).

In asserting that Crane's level of discomfort was not supported by the objective medical evidence provided, the ALJ pointed to specific treatment records that showed that Crane had been more active during the relevant time period than had been described by him at the hearing. AR 37-38, 315, 322, 325. The ALJ found that treatment records showed that Crane was walking daily/exercising to lose weight, was "doing well" and "feels great," and was encouraged to increase his walking to an hour a day. AR 37-38, 315, 322, 325. Though Crane attempts to discredit these records by calling them a "few scattered references to physical activities," this characterization is undermined by the fact that the vast majority of treatment records contained in the record show that diet and exercise have been constantly recommended to help improve his pain. *See, e.g.*, AR 286-288, 299, 306, 315, 322, 325, 346-347, 422, 425. In fact, as late as September 18, 2014, Crane himself was reported as saying that he exercises daily/regularly. AR 422, 425. This is in sharp contrast to Crane's testimony at the June 2, 2015 hearing.

Crane further argues that the treatment records cited by the ALJ were a couple of years older than Crane's testimony at the hearing. This argument is not persuasive, as the records were contemporaneous with the relevant disability period, and the record as a whole does not indicate any reason to discount them. For example, there is no evidence that Crane's condition materially deteriorated in the time period following the medical records reviewed by the ALJ.

The ALJ also found that Crane and his mother's symptom testimonies were inconsistent with the opinions of evaluating physicians. AR 36-38; *see Thomas v. Barnhart*, 278 F.3d 947,

10

958-59 (9th Cir. 2002) (holding that, in evaluating a claimant's symptoms, an ALJ may consider "testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains"); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (stating that an examining physician's opinion can constitute substantial evidence because it is based on an independent examination of the claimant). The ALJ specifically pointed to Crane's October 31, 2012 and May 1, 2013 neurosurgical clinic visits, which emphasized diet and exercise as a form of treatment, and Dr. Pon's assessment, which opined that Crane could perform more physical activity than suggested by him at the hearing. AR 36-38, 346-347, 372-375.

Finally, the ALJ found that the record showed that Crane's last visit for his back was on May 17, 2013. AR 37-38, 408. An ALJ may reasonably infer that, when an individual has medical care available to them and does not avail themselves of such care, such care is not needed or required. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (providing that an ALJ may consider "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment"). Here, the records available to the ALJ at the time of his decision did not show treatment for Crane's back beyond May 17, 2013. The ALJ was therefore permitted to make the inference that no such care had been received. This is especially true where, as here, Crane confirmed that the administrative record was complete (although I am cognizant that Crane was not represented by counsel before and during the hearing). AR 50-51.

Importantly, Crane's characterization of the ALJ's finding a lack of recent treatment as the "main reason" for issuing an adverse decision is inaccurate. There is nothing in the ALJ's decision that suggests that this specific reason, as opposed to the other reasons, was somehow determinative or afforded more weight. It is true that, after the ALJ's decision was issued and as part of his appeal to the Appeals Council, Crane provided supplemental treatment records evidencing back treatment beyond May 17, 2013. AR 414-428. However, these supplemental records are insufficient to undermine the entirety of the ALJ's ruling. The ALJ's pointing to a lack of recent treatment was just one of a number of specific, clear and convincing reasons for discounting Crane's testimony. Even if this basis is omitted, the ALJ has provided other equally weighted justifications, as discussed above.

11

1    In sum, the ALJ provided valid reasons, based on substantial evidence, for discounting
2    Crane and his mother's symptom testimony.

## II. DUTY TO FULLY AND FAIRLY DEVELOP THE ADMINISTRATIVE RECORD

Crane appears to argue in passing that, because there were no medical records regarding treatment for his back following May 2013 until the hearing in 2015, the ALJ failed to fully and fairly develop the administrative record. Mot. at 5.

The Ninth Circuit has explained that, "[i]n Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001) (citing *Tonapetyan*, 242 F.3d at 1150; *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)). "When a claimant is not represented by counsel, this responsibility is heightened." *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003). In such instances, rather than serving as a "mere umpire" (*Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1991)), "the ALJ must be especially diligent in exploring for all the relevant facts." *Tonapetyan*, 242 F.3d at 1150; *see Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978) ("[W]here the claimant is not represented, it is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.") (internal quotations omitted).

Importantly, however, this duty is triggered *only when* evidence in the record is found to be either ambiguous or otherwise inadequate—as determined by the ALJ—to allow for proper evaluation of the evidence. *Mayes*, 276 F.3d at 459-60; *Tonapetyan*, 242 F.3d at 1150 (emphasis added). "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Tonapetyan*, 242 F.3d at 1150.

By the time the June 2, 2015 hearing commenced, the record, as seen by the ALJ, reflected that several agency letters had been distributed to Crane asking for any and all information from medical sources, including: all hospital admissions, histories, and discharge summaries; consultations; CT/MRI/X-ray reports; lab tests; office notes; operative notes; outpatient notes; and

PT progress notes. AR 279-280, 298, 368, 387. Furthermore, at the hearing, the ALJ explained to Crane that he had a right to have a representative present, that he could delay his hearing in order to seek a representative, and that one of the roles of a representative is to help claimants update medical evidence. AR 46-49. After being asked if he wished to waive his right to such a representative and continue the hearing unassisted, Crane willingly and expressly did so. AR 153.

Importantly, the ALJ also took the time to explain to Crane what was currently in the administrative record. AR 50-51. At the hearing, after listening to the ALJ's description of what was included within the record, Crane affirmatively stated that the record was complete. *Id.*

There is nothing in the record suggestive of ambiguity or inadequacy. Moreover, the ALJ made ample attempts to confirm the record was complete. In short, the ALJ did not fail to fully and fairly develop the administrative record.[3]

## CONCLUSION

Because the ALJ fully and fairly developed the administrative record, and because the ALJ's decision was supported by specific, clear reasons, the government's motion for summary judgment is GRANTED and the plaintiff's motion for summary judgment is DENIED.

**IT IS SO ORDERED.**

Dated: February 20, 2018

William H. Orrick
United States District Judge

---

[3] Even if I had found that the ALJ had failed in his duty to fully and fairly develop the record, any such error would be harmless. The supplemental treatment records, provided to the Appeals Council after Crane obtained counsel, from July 25, 2014 to April 3, 2015, are largely consistent with the originally provided treatment records. AR 414-428. In addition to showing Crane receiving treatment for his kidney, hypertension, hyperlipidemia, and chronic back pain, these records show that Crane was in no acute distress and that doctors reported and encouraged Crane's continued exercise regimes. AR 415, 418, 420, 422-423, 425-426, 428. The records do not show any material deterioration of Crane's condition or daily life activities from those described in the records before the ALJ.

13